UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO.  07 C 6409 |
| v. | ) | (96 CR 815) |
| | ) | |
| EDWARD LEE JACKSON | ) | Hon. Charles R. Kocoras |
| | ) | Judge |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S *PRO SE* MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds to *pro se* defendant Edward Lee Jackson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as follows.

I. INTRODUCTION

Jackson's *pro se* petition raises four grounds as to why his conviction and sentence should be vacated. In Ground One, Jackson contends that the investigation that led to his conviction started earlier that represented at trial and from this he speculates that there must have been *Brady* material created during this period which was not produced to him from which he may be able to demonstrate that he is entitled to relief. In Ground Two, Jackson, contends that the trial court violated his rights under the confrontation clause when it prevented the defense from calling non-testifying informants and police officers for the purpose of impeaching them and prevented the defense from impeaching the government's case with the fact that a count in

the original indictment against the defendant had been dismissed. In Ground Three, Jackson contends that his trial counsel was ineffective and labored under a conflict of interest. In Ground Four, Jackson contends that his appellate counsel was ineffective for failing to raise confrontation clause violation he asserts in Ground Two. As addressed in greater detail below, Jackson's motion should be denied because it is untimely and his claims are procedurally deficient in that they are so undeveloped as to be waived and/or are attempts to raise anew claims which were waived for failure to raise them on direct appeal. They also lack merit substantively. To the extent that he asserts conflict of counsel, the trial court held a hearing and that hearing and the entire trial record shows that there was no conflict. To the extent that he asserts ineffective assistance of counsel, he has failed to show that either trial counsel's or appellate counsel's performance was constitutionally deficient. In any event, the overwhelming evidence against Jackson at trial prevents him from showing prejudice.

## II. STANDARDS GOVERNING RELIEF PURSUANT TO SECTION 2255

Relief under section 2255 "is reserved for extraordinary situations." *Prewitt v. U.S.*, 83 F.3d 812, 816 (7th Cir. 1996). Therefore, a criminal defendant may attack the validity of his sentence under section 2255 only if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255 (1999); *Arango-Alvarez v. U.S.*, 134 F.3d 888, 890 (7th Cir. 1998).

### A. Procedural Barriers

A one year limitation period applies to Section 2255 motions. The one year period runs from the date on which the judgment of conviction becomes final. Title 28, United States Code, Section 2255 (1). The judgment in Jackson's case became final on the date the Supreme Court denied his petition for a *writ of certiorari*. *See, Horton v. United States*, 244 F.3d 546, 551 (7th Cir. 2001). A *pro se* Section 2255 motion is considered filed on the date it is deposited in the prison's internal mail system for forwarding to the district court, provided that the petitioner utitlizes, if available, the prison's system for recording legal mail. Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 3(d).

A habeas petitioner may *not* raise (1) issues that were raised on direct appeal, absent a showing of changed circumstances, (2) nonconstitutional issues that could have been raised on direct appeal but were not, and (3) constitutional issues that were not raised on direct appeal unless petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal, or demonstrates that the court's refusal to hear the constitutional claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

"A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. U.S.*, 55 F.3d 316, 319 (7th Cir. 1995); *see also, Bousley v. U.S.*, 523 U.S. 614, –, 118 S. Ct. 1604 (1998)(holding that a section 2255 motion will not do service for a direct appeal). This means that, absent changed circumstances, the court will not reconsider which was already decided on direct appeal, *Olmstead*, 55 F.3d at 319. *See Daniels v. United States*, 26 F.3d 706, 711-712 (7th Cir. 1994); Belford, 975 F.2d at 313; *Williams v. United States*, 2002 WL

226861 at *3 (N.D. Ill.).  Neither may a defendant revive a litigated claim by re-characterizing it as ineffective assistance of counsel.  *See Daniels*, 26 F.3d at 711-12.

Moreover,

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice form the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt*, 83. F.3d at 816; *Kelly v. U.S.*, 29 F.3d 1107, 1112 (7th Cir. 1994). Consequently, a district court may not reach the merits of an appealable issue in a Section 2255 proceeding unless the issue has been raised in a procedurally appropriate manner.  <u>See</u>, *Theodorou v. U.S.*, 887 F.2d 1336, 1339 (7th Cir. 1989); *Johnson v. U.S.*, 838 F.2d 201, 202 (7th Cir. 1988)(emphasizing that a section 2255 petition "will not be allowed to do service for an appeal").  Failure to establish good cause or prejudice requires dismissal of the habeas petition. *See, e.g., Benlow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988).

To show cause, Jackson must demonstrate that an external objective factor impeded his ability to appeal.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  In other words, a "showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard."  <u>Id.</u> (citations omitted).  However, with respect to a claim of ineffective assistance, when a defendant has the same counsel at trial and on appeal, that circumstance generally constitutes good cause for defendant's failure to raise a claim of ineffective assistance on direct appeal.  *Barker v. United States,* 7 F.3d 629, 632 (7th Cir. 1993).

The "miscarriage of justice" exception to cause and prejudice is more narrow: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496.    Moreover, this exception is reserved solely for those with a claim of actual innocence.    *See*, *Boyer v. U.S.*, 55 F.3d 296, 298 (7th Cir. 1995)(holding that petitioner's claim must be one of factual innocence, not legal innocence).

B. Ineffective Assistance of Counsel

Under *Strickland v. Washington*, 466 U.S. 668 (1984), the test for ineffective assistance of counsel is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or the appeal] cannot be relied upon as having produced a just result.'"    *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).    There is a "strong presumption that the petitioner's counsel was constitutionally effective," *Mason*, 97 F.3d at 892, and Jackson bears the "heavy burden" of overcoming this presumption. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 1999).

In order to meet the *Strickland* test, a petitioner must demonstrate that (1) counsel's actions were "beyond the realm of reasonable professional judgment within the context of the case, at the time that counsel acted" (the "performance prong"), and (2) counsel's "ineffectiveness prejudiced him, rendering the proceeding fundamentally unfair and the result unreliable" (the "prejudice prong").    *Mason*, 97 F.3d at 893.

1. <u>Performance Prong</u>

To satisfy the "performance prong," Jackson must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In determining whether Jackson has established deficient "performance" under *Strickland*, the question is whether his counsel's decision "under all the circumstances of this case, . . . [was] made outside the wide range of professionally competent assistance." *Menzer*, 200 F.3d at 1003. Reasonable strategic decisions fall within this range. *Id.* at 1004. Performance of appellate counsel is assessed according to the same standards applied to trial counsel. *Strickland*, 466 U.S. at 687; *Mason*, 97 F.3d at 892.

As both the Supreme Court and the Seventh Circuit have repeatedly held, it is not the court's role to "grade counsel's performance" or to "take up the role of Monday morning quarterback." *Strickland*, 466 U.S. at 697; *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[T]he Constitution calls for a professionally competent defense, not for the best possible defense." *Holman v. Gilmore*, 126 F.3d 876, 883 (7th Cir.1997). Defense counsel "need not pursue every conceivable avenue; they are entitled to be selective." *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993). Every indulgence is given "to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia*, 922 F.2d 413, 417-418 (7th Cir. 1991).

In reviewing the adequacy of defense counsel's performance, this Court "must be 'highly deferential' and 'indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Canaan v. McBride*, 395 F.3d 376, 384 (7ᵗʰ Cir. 2005) (quoting *Strickland*, 466 U.S. at 689 (internal quotation marks omitted)).  In other words, the court "presumes that counsel exercised reasonable professional judgment in making all significant decisions and otherwise rendered adequate assistance."  *United States v. Moutry*, 46 F.3d 598, 604-05 (7th Cir. 1995).  The court will not second-guess trial tactics that are rationally based. *United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir.1994). See also *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir.1991) ("It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.").

### 2. Prejudice Prong

If the record supports a finding of substandard performance, the Court must then determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes,* 14 F.3d 1207, 1209-10 (7th Cir. 1994).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In considering the prejudice prong, the Court must apply not simply an outcome determinative test, but also must assess whether the deficient performance deprived the defendant of a fair trial.  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).  Thus, with regard to the prejudice prong, "[i]t is not enough for the defendant to

show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

    C.  Conflict of Counsel

    There exists at least a potential conflict of interest when defense counsel is accused of or is being investigated for alleged wrongdoing (*i.e.,* the attorney's personal interests are at odds with the client's). *See, e.g. United States v. Stoia*, 22 F.3d 766, 770-71 (7th Cir. 1994). To show a Sixth Amendment violation resulting from such a conflict, a defendant must show:  a) the existence of an actual conflict, and b) the conflict "adversely affected his representation." *United States v. Wallace*, 276 F.3d 360, 367-68 (7th Cir. 2002), citing *Cuyler v. Sullivan,* 446 U.S. 335 (1980). An alternative approach, which requires more of a defendant but can take him to the same destination, is found in the general ineffective assistance of counsel cases following *Strickland*, 466 U.S. 668: a) counsel's performance fell below an objective standard of reasonableness and b) prejudice resulted from the deficient representation.  The 7th Circuit holds that when an actual conflict of interest exists and adverse performance results, prejudice is presumed.  *Wallace*, 276 F.3d at 366-6 and *Stoia*, 22 F.3d at 770. There is a some dicta in *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002) to the effect that the more defendant friendly *Cuyler* standard may not apply in these situations, but at least one district court in the Sixth Circuit held that 6th Circuit law requires that *Cuyler be* applied in all Sixth Amendment conflict cases.  *United States v. Ruggiero*, 330 F.Supp.2d 900, 905-06 (E.D. Mi. 2004).

    On the issue of the defendant's burden to show that an actual conflict of interest existed, the mere fact that counsel is under investigation "does not create a fatal conflict . . . An actual

fear of retaliation must be shown." *United States v. Montana*, 199 F.3d 947, 949 (7th Cir. 1999) (citing *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir. 1994) and other cases).

The Seventh Circuit has held that a court of appeals will presume the *Strickland* prejudice requirement met when a trial judge knows or should have known that a potential conflict of interest exists and does not adequately address the issue with the defendant. *Wallace*, 276 F.3d at 367). The court has an obligation to "hold a hearing to determine whether the potential conflict jeopardizes the client's right to counsel." (*United States v. Balzano*, 916 F.2d 273, 1292-93 (7th Cir. 1990).

D. Undeveloped Arguments

Claims of error which are undeveloped and unsupported by pertinent legal authority are considered forfeited or waived. The Seventh Circuit "has repeatedly warned litigants that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Wimberly*, 60 F.3d 281, 287 (7th Cir. 1995) (*citing United States v. Berkowitz*, 927 F.2d 1376, 1385 (7th Cir. 1991); *see also United States v. Watson*, 189 F.3d 496, 500 (7th Cir. 1999); *United States v. Smallwood*, 188 F.3d 905, 914 (7th Cir. 1999), *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993). Any government response to these undeveloped and unsupported arguments should not be interpreted as a waiver of the argument that they are waived.

E. Necessity for a Hearing

Jackson is not automatically entitled to a hearing. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) ("Even where factual improprieties are alleged, an evidentiary

hearing is not warranted for every 2255 petition[,] [as] the district court has discretion to deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."); *United States v. Gallo-Vasquez*, 402 F.3d 793, 797 (7th Cir. 2005) (a district court is entitled to consider "all the circumstances in the record in determining whether a hearing should be afforded.") (quotation omitted).  With respect to allegations of ineffective assistance, it is the rule of the Seventh Circuit that in order for an evidentiary hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions. *Prewitt,* 83 F.3d at 819.  This analysis takes place in the context of the presumption that an attorney's conduct is reasonably proficient.  *Galbraith,* 313 F.3d at 1008.

III. <u>FACTUAL BACKGROUND</u>

Defendant Jackson was one of a group of Chicago Police Officers assigned to tactical teams in the 15th Police District (the Austin District) who regularly took money and drugs from drug dealers in street stops and home invasions, and  provided protection to drug dealers.  This case arose from an undercover investigation of police corruption in Austin District by the Chicago Police Department and the FBI,    Tr.10,11,119,125-127,689[1], which involved surveillance teams using video and audio tape to record the officers' criminal behavior. Tr.116-119,126,262,350,402.   A Chicago Police Officer assumed the undercover role of "Silky," a purported large-scale cocaine dealer with a lengthy criminal record,  Tr.120-121,654,263-264,

---

[1] References are to trial and sentencing transcripts and to trial exhibits.

who was assisted by confidential informants "Boojie"[2] and "Ronnie." Tr.212,223,224,229. [3]

Jackson was among seven police officers charged as a result of this undercover investigation and

the historical investigation which followed. The facts relevant to Jackson are set forth below. A.

Extortions

On March 13, 1996, Boojie telephoned Jackson to say that he planned to meet Silky at

the Uncle Remus restaurant, telling Jackson Silky's license plate number and describing Silky's

vehicle. Tr.134-135. When Silky and Boojie arrived at the restaurant, they were approached by

Officers M.L. Moore and Lennon Shields. Tr.136. Both officers were armed. Tr.170. Moore

and Shields searched Silky and Boojie; Moore found $5,000 in Silky's pocket. Tr.139-140.

After a "blue and white vehicle" arrived at the scene, Tr.142,144,2935, Silky's vehicle was

searched, ibid. The investigation team had planted digital scales, mock drug ledgers, and a

wrapper for a kilogram of cocaine in the vehicle to enhance Silky's credibility as a drug dealer.

Tr.128,2938. Once the blue and white vehicle left, Moore and Shields placed Silky and Boojie,

handcuffed, into the back of an unmarked police vehicle. Tr.144-146. Silky told Moore that he

(Silky) was on parole and did not want to go back to prison, and that he would give Moore and

Shields $1,000 each to let him go. Tr.150-151,153. Moore and Shields drove Silky and Boojie

to an alley behind the restaurant and told Silky that he "had to do better than $1,000 apiece."

Tr.158. The officers took $4,000 from Silky. Tr.158-161, 2938-2939. Silky provided them with

his pager number. Tr.161-162.

---

[2] Boojie's name was Myron Robinson.

[3] FBI Daron Council served a secondary undercover role as a member of Silky's purported drug
organization. However, Council's role was restricted to the drug escort portion of the
investigation in which Jackson was not involved.

On May 2, 1996, Boojie called Jackson and told him that he would be meeting Silky at a Chinese restaurant that evening in the Austin District and that Silky would be carrying a large sum of cash.  Tr.260-261,269.  Jackson and Officer Cornelius Tripp arrived at the restaurant in an unmarked police vehicle.  Tr.270-271,1494-1509.  Silky and Boojie were in Silky's vehicle; the officers approached them with their guns drawn.  Tr.271,1496.  After handcuffing Silky and Boojie, Jackson and Tripp searched Silky's vehicle, finding four boxes of baking soda, mock drug ledgers, a digital scale, and $10,000.   Tr.263-265,272-275,277,1499-1500.   Jackson and Tripp then had Silky transported to the 15th District Police Station and taken to the tactical team unit office.  Tr.278,1500-1504.  There, Jackson falsely told Silky that the search of his vehicle had turned up 350 grams of cocaine and a weapon, Tr.280, but that if the officers could keep the $10,000, "you get to walk out of here."  Tr.280.  Although Jackson had Tripp strip search Silky, Tr.281-282,1507-1508, and accused him of "working with the feds," Tr.283, he eventually returned Silky's scale and, with Tripp, escorted Silky "down the front stairs of the police station and out the front door," Tr.284.  Jackson and Tripp kept the $10,000.[4]  Tr.1509,1511.

B. Stash-House Robberies

On  November 7, 1996, Jackson and  Young, along with  Officer Gregory Crittleton, Timothy White, and Terry Young[5], attempted to rob and extort drugs from Mark Clemons, a

---

[4] Jackson and Tripp committed numerous additional extortions and attempted extortions of drug dealers.  See Tr.1556-1570.

[5] Terry Young, who was also known as "T-Fly", was not a Chicago Police Officer, but rather was the Chief of the Traveling Vice Lords street gang and a close associate of Jackson's.  Tr.1605,2819,2869. Terry Young  is currently serving a life sentence as result of his drug conspiracy conviction in 97 CR 63. Jackson was also charged in 96 CR 73, but due to a severance, went to trial first in this case. As a result of his sentence in this case, the government elected not to take Jackson to trial in 97 CR 63.

cocaine dealer, at Clemon's mother's residence on Warren Boulevard in Chicago. Tr.1896. Jackson learned that Clemons was dealing drugs from that address and, with Crittleton, told the other officers that they could make some money. Tr.1923,1540-1541. The officers, including Jackson (who was not working that day) approached the house, without a search warrant, but with guns drawn and kicked the front door. Tr.1546-1547,1892. Once inside, they discovered three persons (Clemon's sister, older brother, and a three-year old child, Tr.1892), whom the officers placed into a room before searching the house for drugs. Tr.1547-1549,1898-1899. Finding none, they arrested Clemon's brother, along with Clemens and another man, who were discovered outside the house. Tr.1549-1551,1900-1901,1940. They took the three men to the 15th Police District tactical unit office, and demanded their drugs. Tr.1552-1553. One of them complained loudly about being arrested for no reason and Young ran into the room and struck him, telling him to "shut up." Tr.1554-1555,1946. Clemons promised Young $1,000, Tr.1948-1949; after which the men were ticketed for disorderly conduct and released, Tr.1555-1556.

On November 24, 1996, Jackson, Crittleton, and Tripp robbed the apartment at 7 Mayfield Street, after Boojie told Jackson that the apartment contained Silky's drugs and money. Tr.1572; 11/24/96 Mayfield Wiretap 11, at 1. Without a search warrant, the officers entered the apartment and discovered $26,000, jewelry, wrappers for seven kilograms of cocaine, and what they thought was a small amount of cocaine. Tr.849,1574-1575,1577,1579; 11/24/96 Mayfield Wiretap 7, at 4. Jackson gave Crittleton and Tripp $5,000 each. Tr.1577. The officers told Boojie that the apartment only contained $13,000, and gave him $5,000 and a gold chain. Tr.1580-1581,1581-1582.

Roughly two weeks later, on December 11, 1996, Jackson, Crittleton and Tripp committed another robbery. This time, Jackson obtained a search warrant based on alleged information from a confidential informant that a man named Andre Colbage was selling cocaine from apartment 710 at 77 West Huron Street, Tr.1594-1596,1676, and that there were large quantities of cocaine and money on the premises, Tr.1677. After searching the apartment, Tripp stole $2,000 in cash, Tr.1602, which he shared with Crittleton, Tr.1679-1680. Jackson discovered and stole three or four tennis ball-sized rocks of crack cocaine, Tr.1601,1603-1605, which were later delivered to a Terry T-Fly Young for re-sale, Tr.1605,1609. The evidence at trial was replete with instances in which Jackson, a ranking member of the Conservative Vice Lords street gang, included Terry Young in criminal activity, and acknowledged his allegiance to Terry Young, while deceiving his superiors at the police department.

IV.  PROCEDURAL BACKGROUND

A. Superseding Indictment

Jackson was charged in the superseding indictment with racketeering and racketeering conspiracy, in violation of 18 U.S.C. 1961(1) and (5), and 1962(c) and (d) (Counts 1,2) with extortion and robbery, in violation of 18 U.S.C. 1951 and 2 (Counts 3, 7, 14, 15, 24, 28); using and carrying a firearm during and in relation to a crime of violence or a drug trafficking offense, in violation of 18 U.S.C. 924(c) and 2 (Counts 4, 8, 16, 27, 29); and conspiracy to distribute cocaine, in violation of 21 U.S.C. 846 and 2 (Counts 25, 26).

B. Relevant Pre-Trial Issues and Rulings

Cooperating individual, Myron Robinson, engaged in misconduct resulting in Jackson being wrongly charged in Count One (the December 8th incident) of the Indictment. The

14

government dismissed this charge and did not include it in the Superseding Indictment. Robinson was also prosecuted for this misconduct. Special Agent Council engaged in misconduct subsequent and unrelated to the investigation resulting in the charges in this case. Council, too, was prosecuted.

The government informed the defendants that would not be calling either Robinson or Council as witnesses. The trial court granted the government's motion precluding the defendants from calling  Robinson or Council simply to impeach them, but also provided that any defendant could call Robinson or Council if it first proffered "legitimate bases by which the witness could provide relevant favorable testimony for defendants." Memorandum Opinion and Order, April 10, 1998; R 349.  The trial court also granted the government's motion precluding the defendants from making reference to the December 8th incident without first obtaining the Court's permission.  Memorandum Opinion and Order, April 14, 1998; R 352.

C. Trial

The evidence against Jackson was overwhelming and included the testimony of Silky and codefendant Tripp and the audio and video tapes of the Jackson and his coconspirators planning, committing and/or reminiscing about the crimes with which they were charged. The government called neither Robinson nor Council as a witness at trial. No defendant attempted to comply with the trial court's order to  proffer a   "legitimate bases" by which Robinson or Council "could provide relevant favorable testimony for defendants" or attempted to proffer a basis to cross-examine government witnesses about the December 8th incident. At trial, the government played recordings in which Robinson or Council were seen and heard, but only where it had the ability to lay the foundation for these recordings through testifying agents who were present for the

15

events recorded. One of Jackson's codefendants, Moore, introduced recorded statements of Robinson to place in context Moore's own statements which he contended supported public authority defense. Tr 206. The trial court specifically instructed the jury that the recordings involving Robinson which were played as part of Moore's case were admissible only as to Moore. Tr 207. At the time recordings involving Robinson and Council were played, the trial court specifically instructed the jury that the recorded statements were admitted for the limited purpose of placing the statements of others in context and not for the truth of the matter asserted. Tr 207-08. At the close of the case, the trial court again instructed the jury of the limited purpose of the statements of Robinson and Council. Jury Instruction 12.

Jackson testified at trial. His testimony was incredible and consisted of attempting to convince the jurors to accept his alternate version of reality. For example, Jackson repeatedly asserted that words he used in the recordings which commonly had incriminating meanings were actually used by him to mean something non-incriminating.  Not surprisingly, Jackson was found guilty on all counts.

D. Sentencing

The Guidelines calculations on the racketeering and extortion counts, included upward adjustments for abuse of trust, role in the offense, and obstruction of justice, resulting in a range of 360 months' to life. The district court imposed the low end of 360 months. Because the statutory maximum for extortion was 20 years,  the Court imposed concurrent 20-year sentences on each of these counts.  On each of the two narcotics counts, the Court imposed the mandatory minimum, 10 years, concurrent with each other, and consecutive to the sentences on the racketeering and extortion counts.  Consecutive sentences for the § 924(c) counts were mandated

16

by the statute - five years for the first one, and 20 each (under the law in effect at the time of the crimes) for the other four. Jackson's total sentence of imprisonment is 115 years, as well as two years' supervised release and a fine $25,000.

E. <u>Relevant Appellate History</u>

On appeal, Jackson failed to raise either the conflicted counsel or the confrontation issues he now raises in his motion. Jackson's conviction was affirmed. *See United States v. Moore*, 363 F.3d 631 (7th Cir. 2004). However, limited remand was ordered under *Booker* for a determination as to whether this Court would have imposed the same sentence under advisory guidelines. R. 796. On November 17, 2005, this Court ruled that it would have imposed the same sentence. R. 818. On January 19, 2006, the Court of Appeals affirmed this Court's sentence. Jackson's petition for a *writ of certiorari* was denied on October 2, 2006. R. 818, 821.

F. <u>Jackson's Motion</u>

Jackson's Section 2255 Motion was filed on November 13, 2007, more than one year after the denial of his petition for a *writ of certiorari*. However, Jackson contends in a letter that he had placed his Section 2255 Motion in the institutional legal mail on September 28, 2007.

V. <u>ANALYSIS</u>

Jackson raises four grounds, which, along with the issue of timeliness, are addressed below.

A. <u>Timeliness of Jackson's Motion</u>

Jackson's Section 2255 Motion is untimely as it was filed on November 13, 2007,  more than one year after the denial of his petition for a *writ of certiorari*. On October 2, 2006. untimely. In order for it to be considered timely based upon Jackson's purported placing with the

17

prison for mailing prior to the expiration of the one year time limit, Jackson must provide a notarized declaration setting forth the date his Section 2255 Petition was deposited in the prison internal mailing system and whether first class postage was prepaid. Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 3(d). The letter submitted by Jackson does not comply with Rule 3(d) .

    B. <u>Speculation as to Undisclosed *Brady*</u>

Ground One is based upon Jackson contention that government records[6] recently disclosed indicate that the investigation that led to his conviction started earlier than represented at trial. Jackson does not specify when he learned this new information or the earlier date upon which he now believes that the investigation began. In any event, based upon the premise that the investigation began at an earlier date, Jackson has a "<u>belief</u>" that material evidence, *Brady*, was withheld, and "provides a basis for concluding that, given an opportunity to develop all the relevant facts, Petitioner <u>may</u> be able to demonstrate entitlement to vacature of his conviction."

This perfunctory claim should be denied as waived under *Wimberly* for, as even Jackson concedes, it is undeveloped and based totally on his speculation that there may be a basis for relief. Moreover, what Jackson really is asking is for the Court to allow him to go on a post-conviction fishing expedition in the hopes of turning up a *Brady* violation. Even in the pre-trial context, the Seventh Circuit expressly held that "a defendant is not entitled to discovery material under *Brady* 'without even a hint that impeaching material was contained therein' . . . or where the defendant 'has made no showing at all by affidavits or otherwise that any evidence was

---

[6] This acknowledgment that he has had access to records is contrary to his claim that his access has been denied.

suppressed by the government.'" *United States v. Morris*, 957 F.2d 1391, 1402-03 (7th Cir. 1992) (quoting *United States v. Romo*, 914 F.2d 889, 898-99 (7th Cir. 1990) (citations omitted)); *accord United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984) ("Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for in camera inspection, much less reversal for a new trial. A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court"). Ground One is totally lacking in merit and should be denied.

    C. <u>Confrontation Clause</u>

In Ground Two, Jackson, contends that the trial court violated his rights under the confrontation clause when it prevented the defense from cross-examining non-testifying informants and police officers and prevented the defense from impeaching the government's case with the fact that a count in the original indictment against the defendant was dismissed. This undeveloped ground is procedurally barred and waived. It was not raised on direct appeal and Jackson has failed to attempt to show cause and prejudice for his failure to do so. Thus, it can only be raised, as it is in Ground Four, as an ineffective assistance claim. It is also waived as undeveloped. Finally, as set forth below, it is substantively without merit.

The trial transcript and jury instructions combined with case law show Jackson's rights under the confrontation clause were not violated when audio and video recordings of Robinson and Council were admitted into evidence. First of all, Jackson's claims regarding Council's statements are frivolous as Council had no dealings with Jackson and thus the recordings relating to Council could not have prejudiced Jackson. Moreover, the jury was specifically instructed that

the recordings involving Robinson which were played as part of Moore's case were admissible only as to Moore. Tr 207.

Finally, the confrontation clause claim has no merit because the statements of Robinson and Council were not hearsay as defined under Rule 801(c), in that they were not admitted for the truth of the matter asserted.  At the time recordings involving Robinson and Council were played and again at the close of the case, the trial court specifically instructed the jury that the recorded statements were admitted for the limited purpose of placing the statements of others in context and not for the truth of the matter asserted. Tr 207-08; Jury Instruction 12; *see  United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir. 1989)("the admission of [the CI's] portion of the conversations do not implicate [the defendant's] sixth amendment rights because the tape recorded statements were admitted for the limited purpose of placing [the defendant's] statements in context."); *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991)(summarily rejecting Sixth Amendment confrontation claim and noting that the jury was instructed not to consider the CI's statements for the truth of the matters asserted). Ground Two is also totally lacking in merit and should be denied.

D.  Conflicted and Ineffective Trial Counsel

 In Ground Three, Jackson contends that his trial counsel was conflicted and ineffective. Jackson contends that trial counsel was conflicted because she was under investigation in the context of her relationship with one of Jackson's codefendant's in a related case (97 CR 63) and that, because this actual conflict was brought to the attention of the trial court which did not inquire further, he need not point to specific instances in which trial counsel's performance was affected by the conflict.

The trial transcript that Jackson seeks shows that this issue has no merit. The conflict issue was brought to the attention of the trial judge, who made an inquiry on the record and held a hearing. The issue was resolved when the government informed Jackson's trial counsel that she was not under investigation. Thus, there was no conflict.

The issue of Jackson's trial counsel potentially being under investigation was brought to trial court's attention by Jackson's trial counsel, in the context of an allegation that trial counsel had attempted to influence the testimony of a witness in the trial of this case, Tr 1280-82, 1312, and trial counsel having been intercepted over one of the wiretaps which had generated certain of the recorded conversations admitted into evidence in this case. Tr 1316-17.   Trial counsel informed the Court that she was disturbed by the possibility that she was under investigation and believed that she was not adequately representing Jackson at that particular point. Tr 1313-18. The trial court recessed the trial for the remainder of the day.  Tr. 1319.

The trial court subsequently held a hearing on the matter, Tr 1349-63, at which not only was the government's entire trial team present, but also the First Assistant. Tr 1351. The trial court specifically inquired of each member of the government's trial team as to whether Jackson's trial counsel was under investigation. Jackson's trial counsel was informed that she was not under investigation.  Tr 1355-56.   The trial court made further accommodations for Jackson's trial counsel by allowing her to cross-examine a witness who testified on the day she brought up the under investigation issue out of order, thereby allowing Jackson' trial counsel additional time to prepare. Tr 1320.  At the conclusion of the hearing, Jackson's trial counsel made it clear that the potential that she was under investigation had only affected her performance on the afternoon that the trial court recessed at her request. Tr 1360.  Jackson's trial

21

counsel then continued to represent him in the same zealous manner as she had through out the trial. This issue was not raised in post-trial motions by trial counsel or on appeal by different appellate counsel and thus is also procedurally barred.

As for the claim that trial counsel was ineffective, it is based upon her failure to object to the exclusion of key witness at trial, and to object to the introduction of various audio and video tapes without the opportunity to cross-examine the participants. Jackson does not now identify the witnesses or the tapes, but the government assumes that this is a reformulation of the confrontation clause issue which forms the basis for Ground Two.  Jackson must established deficient "performance" under *Strickland* -  his counsel's decision "under all the circumstances of this case, . . . [was] made outside the wide range of professionally competent assistance." *Menzer*, 200 F.3d at 1003.  Reasonable strategic decisions fall within this range.  *Id.* at 1004. Jackson has failed to overcome *Strickland's* presumption that counsel exercised reasonable professional judgment. Trial counsel need not pursue every conceivable avenue; she was entitled to be  selective and to decline to purse a legal strategy which was unsupported by the law. *Davenport*, 986 F.2d at 1049. Jackson perfunctory motion fails to suggest how the confrontation clause claim could have been successful. A review of the trial record reveals nothing if that trial counsel's defense of Jackson was zealous.[7] In fact, it was trial counsel's zeal in representing Jackson which provoked the confrontation which led to the conflict hearing.

---

[7] Jackson also asserts in conclusory fashion that trial counsel was ineffective because she was under medication. However, the trial court recessed on the date that trial counsel indicated that she was not feeling well, trial counsel complained no further and Jackson has failed to point out even one instance in which trial counsel's performance was constitutionally deficient.

Even assuming that the Court were to find substandard performance, the Court must find that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes,* 14 F.3d 1207, 1209-10 (7th Cir. 1994). In considering the prejudice prong, the Court must apply not simply an outcome determinative test, but also must assess whether the deficient performance deprived the defendant of a fair trial. *Lockhart*, 506 U.S. at 369-70. Thus, with regard to the prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. In the context of this case, in light of the overwhelming evidence supporting his conviction, any claim of prejudice is frivolous.

E. Ineffective Appellate Counsel

In Ground Four, Jackson contends that his appellate counsel was ineffective for failing to raise the confrontation clause violations which form the basis for Ground Two. Again, Jackson must established deficient "performance" under *Strickland* - his appellate counsel's decision "under all the circumstances of this case, . . . [was] made outside the wide range of professionally competent assistance." *Menzer*, 200 F.3d at 1003. Here, appellate Counsel's decision not to raise issues which were not supported by the underlying record and contrary to established Seventh Circuit precedent was the exercise of reasonable professional judgment. Jackson's claim to the contrary is frivolous.

VI. <u>CONCLUSION</u>

WHEREFORE, the United States asks this Court to deny defendant Jackson's § 2255

Petition without a hearing.[8]

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

January 22, 2008            By:   _____

BRIAN PATRICK NETOLS
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-4128

---

[8] Jackson claims that his ability to present additional facts in support of grounds One through Three has been prohibited by lack of access to records which have been withheld from him by prior counsel. For this reason, Jackson requests that his motion be considered a "placeholder" motion to be amend at some future time. However, this request should be denied for Jackson has previously filed a motion seeking transcripts and documents. R. 824. On December 11, 2006, this Court denied that motion without prejudice and ordered Jackson to identify both the transcripts and documents needed and the purpose for which they were sought and his efforts to obtain these materials from prior counsel. R. 830. Jackson has yet to comply with this order.