MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# FILED

APR 2 5 2008 *asw*
4-25-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA,      )
                               )
        Respondent-Plaintiff,  )
                               )
    -vs                        )    Civil No. 1:07-cv-06409
                               )    (Crim. No. 96-cr-815)
EDWARD LEE JACKSON, JR.,       )    Judge Charles P. Kocoras
                               )
        Petitioner-Defendant.  )


## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY/OPPOSITION TO GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255


### Introduction

Presently pending the Court's determination is Petitioner's
pro se motion to vacate, set aside or correct sentence under
28 U.S.C. § 2255.  Petitioner filed his § 2255 motion with the
Court on September 28, 2007, by delivering same to prison officers
for mailing, with first class postage prepaid and addressed to
the Clerk of the Court.  The motion asserts that Petitioner is
entitled to relief under § 2255 on four grounds:  Ground One,
the conviction was obtained in violation of U.S. Constitution,
Amendment V (denial of due process of law - the Government withheld
information about its investigation of Petitioner that was material
and favorable to his defense); Ground Two, the conviction was
obtained in violation of U.S. Constitution, Amendment VI (confron-

tation clause violation); Ground Three, conviction obtained in
violation of U.S. Constitution, Amendment VI (denial of right
to conflict-free counsel and effective assistance of counsel at
trial); Ground Four, conviction obtained in violation of U.S.
Constitution, Amendment VI (ineffective assistance of counsel on
direct appeal).

On January 22, 2008, the attorneys for the United States
filed an untimely response the Petitioner's § 2255 motion, wherein
it is contended that the "motion should be denied because it
is untimely and the claims are procedurally deficient in that
they are so undeveloped as to be waived and/or are attempts to
raise anew claims which were waived for failure to raise them
on direct appeal [and] [t]hey also lack merit substantively."
Government's Response to Defendant's Pro Se Motion to Vacate,
set aise, ro Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Govern-
ments Response"), at 2.

For the reasons set forth below, the Court should decline
the United States' invitation to deny Petitioner's § 2255 motion
without a hearing or some further opportunity to develop facts
that may entitle him to relief.

### Standards of Review/Applicable Authority

A convicted defendant will have the judgment and sentence
vacated or set aside under 28 U.S.C. § 2255 only upon showing
that "the sentence was imposed in violation of the Constitution

or laws of the United States, or that the court was without juris-
diction to impose such sentence, or that the sentence was in
excess of the maximum authorized by law, or is otherwise subject
to collateral attack."  28 US.C. § 2255. "Unless the motion and
the files and records of the case conclusively show that the
prisoner is entitled to no relief, the court shall...grant a prompt
hearing thereon, determine the issues and make findings of fact
and conclusions of law with respect thereto."  Id.

A petitioner collaterally attacking his sentence or conviction
pursuant to § 2255 bears the burden of proving his entitlement to
relief by a preponderance of the evidence.  Walker v. Johnston,
312 US 275 (1941).  However, a prisoner's allegations of fact in
support of a § 2255 motion must be taken as true unless they
are "palpably incredible, [or] patently frivolous or false."
Blackledge v. Allison, 431 US 63, 76 (1977), quoting Pennsylvania
ex rel. Herman v. Claudy, 350 US 116, 119 (1956).  Additionally,
a pro se § 2255 petitioner is entitled to have his motion construed
liberally.  Price v. Johnston, 334 US 266, 292 (1948); McNeil v.
United States, 508 US 106, 113 (1993) ("...we have insisted that
the pleadings prepared by prisoners who do not have access to
counsel be liberally construed."  Every § 2255 motion is entitled
to careful consideration and plenary processing of its claims,
including opportunity for presentation of the relevant facts.
Blackledge, supra, 431 US at 82, quoting Harris v. Nelson, 394 US
286, 298 (1969).  "Where specific allegations before the court

show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, **it is the duty of the court to provide the neccessary facilities and procedures for an adequate inquiry.**" Harris, supra, 294 US at 300 (emphasis added).

Generally, a petitioner for relief under § 2255 may not raise: (1) issues raised and decided on direct appeal, absent a showing of changed circumstances; [1] (2) nonconstitutional issues that could have been raised on direct appeal but were not; [2] and (3) constitutional issues that were not raised on direct appeal, unless petitioner demonstrates cause for the procedural default and actual prejudice resulting from the errors complained of, or demonstrates that the court's refusal to hear the constitutional claim would result in a fundamental miscarriage of justice. [3] However, a convicted federal criminal defendant may properly first bring an ineffective-assistance of counsel claim in a collateral proceeding under § 2255, regardless of whether the defendant could have raised the claim on direct appeal. Massaro v. United States, 538 US 500 (2003).

---

[1] See Davis v. United States, 417 US 333 (1974); Olmstead v. United States, 55 F3d 316 (7th Cir. 1995).

[2] See United States v. Timmreck, 441 US 780 (1979); Olmstead, supra.

[3] See United States v. Frady, 456 US 152 (1982); Murray v. Carrier, 477 US 478 (1986).

-4-

**Argument**

I.   PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 SHOULD
     BE DEEMED TIMELY FILED.

The first argument advanced by the Government in its "Response"
is that Petitioner's § 2255 motion should be denied as untimely
because "it was filed on November 13, 2007, more than one year
after the denial of his petition for a writ of certiorari. On [sic]
October 2, 2006." Government's Response at 17. The Response
further states that, "[i]n order for [the motion] to be considered
timely based upon Jackson's purported placing with the prison for
mailing prior to the expiration of the one year time limit, Jackson
must provide a notarized declaration setting forth the date his
Section 2255 Petition was deposited in the prison internal mailing
system and whether first class postage was prepaid...The letter
submitted by Jackson does not comply with Rule 3(d)." [4] Id. at 17-
18.

Rule 3(d) of the Rules Governing Section 2255 Proceedings
for the United States District Courts ("§ 2255 Rules") provides--

> A paper filed by an inmate confined in an institution is
> timely if deposited in the institution's internal mailing
> system on or before the last day for filing. If an insti-
> tution has a system designed for legal mail, the inmate
> must use that system to receive the benefit of this rule.

---

[4] The quoted passage refers to a letter Petitioner mailed to the Court Clerk, on or about October
20, 2007, noting that his "original § 2255 motion had been placed in the prison mail system on
September 28, 2007, and inquiring into its status. When the Clerk sent a reply stating that the
original § 2255 motion had not been received, Petitioner promptly mailed additional copies of the
motion to the Court via certified mail; these were received by the clerk an filed on November 13,
2007.

> Timely filing may be shown by a declaration in compliance
> with 28 U.S.C. § 1746 **or by a notarized statement,** either
> of which must set forth the date of deposit and state that
> first-class postage has been prepaid.

Rule 3(d), § 2255 Rules (emphasis added).  Rule 3(d), as amended

in 2004, incorporates a principle commonly known as the **prison**

**mailbox rule.**  See Houston v. Lack, 485 US 266 (1988).  Even

before the amendment, courts commonly applied the prison mailbox

rule in determining whether a state prisoner's habeas corpus

petition or a federal prisoner's § 2255 motion was filed in

compliance with the statute of limitations established by the

Antiterrorism and Effective Death Penalty Act of 1996.  See

United States ex rel. Gonzalez v. DeTella, 6 FSupp2d 780, 782-83

(NDIll 1998) (holding habeas petitioner was deemed to have filed

his petition, for limitations purposes, on the date he delivered

it to prison officials for mailing, not the date on which the

clerk of court received the petition); Towns v. United States,

190 F3d 468 (6th Cir. 1999) (holding motion to vacate sentence

was timely under Houston when signed under penalty of perjury

one day prior to expiration of one-year filing deadline, which

"indicat[ed] that it was timely delivered to prison mailroom

employees"); Morales-Rivera v. United States, 189 F3d 109, 110-11

(1st Cir. 1999) (holding habeas corpus petition is filed on

date it is deposited in prison mail system); United States v.

Gray, 182 F3d 762, 765 (10th Cir. 1999) (holding prison mailbox

rule applied and rendered petitio timely, notwithstanding prisoner's

use of institution's regular mail system instead of legal mail

system, because prison failed to maintain legal mail system
that satisfies <u>Houston v. Lack</u>'s implicit understanding that
prison authorities log in all legal mail at the time it is
received); <u>Washington v. UnitedStates</u>, 243 F3d 1299, 1301 (11th
Cir. 2001) ("prisoner's pro se § 2255 motion is deemed filed
the date it is delivered to prison authorities for mailing...
absent evidence to the contrary in the form of prison logs or
other records, we will assume that Washington's motion was delivered
to prison authorities the day he signed it").

Clearly, Respondent is incorrect in reading Rule 3(d) as
requiring that a declaration contemplated thereunder be notarized.[5]
Insofar as Respondent contends that the fact of Petitioner's
mailing of his original § 2255 motion, within the one-year time
limit, is not established for purposes or Rule 3(d) by the "letter
submitted,"[6] it is here noted that on February 21, 2008, Petitioner
filed and served a Declaration in Support of Motion to Vacate
Convictions and Sentence Under 28 U.S.C. § 2255.  In said declara-
tion, made pursuant to 28 U.S.C. § 1746, Petitioner sets forth
the date and statement(s) requried to show timely filing of
the pending § 2255 motion under Rule 3(d).  See Declaration in

---

[5]  See Rule 3(d); <u>Washington v. United States</u>, supra (finding § 2255 form motion, like the
one used in the instant case, which had been dated and signed by prisoner under penalty of perjury,
sufficed to establish timeliness where signature date was within one-year limitations period);
<u>Towns v. United States</u>, supra (same).

[6]  Government Response at 18.

Support of Motion to vacate, ¶ 47.  But the date and signature under penalty of perjury that was entered by Petitioner on the form motion used should also satisfy requirements of Rule 3(d).

More importantly, it should be noted that the truth of the matters asserted in Petitioner's correspondence to the Clerk - i.e., that he mailed to the Court, on September 28, 2007, an original and copies of the pending § 2255 motion which, for reasons unknown, were not received - is not controverted by Respondent.  **"Absent evidence to the contrary in the form of prison logs or other records,"** this Court should assume that Petitioner's motion was delivered to prison authorities for mailing the day he signed it.[7]  Washington, 243 F3d at 1301.

The one year time limit for filing a § 2255 motion is a statute of limitations subject to equitable modification, such as tolling, rather than an inflexible jurisdictional bar.  See Taliani v. Chrans, 189 F3d 597, 598 (7th Cir. 1999); Nolan v. United States, 358 F3d 480, 483 (7th Cir. 2004).  The doctrines of equitable tolling and waiver can be invoked to avert unjust application of the one year statute of limitations to bar a federal habeas corpus petition or § 2255 motion.  "Equitable tolling is proper when extraordinary circumstances outside of the petitioner's control prevent timely filing of the habeas petition."  Balsewicz v. Kingston, 425 F3d 1029, 1033 (7th Cir.

---

[7]  The prison where Petitioner is confined does not log or otherwise record the date of receipt of inmates' outgoing legal mail.

(2005).  See Also <u>United States v. Marcello</u>, 212 F3d 1005, 1010
(7th Cir. 2000) (recognizing that equitable tolling may be
applied to one-year limitations period for 28 U.S.C. § 2255 motions).
In <u>Moultrie v. United States</u>, 147 FSupp2d 405 (DSC 2001), a case
in which the Government challenged the timeliness of a § 2255 motion
on facts similar to those presented by the case at bar, the court
declined to bar review of merits of motion upon finding that the
petitioner's explanation for the untimeliness was true, "the
circumstances were external to the petitioner's own conduct,"
and equitable tolling was appropriate.  Id., at 408-09; see also,
<u>Miles v. Prunty</u>, 187 F3d 1104, 1107 ((9th Cir. 1999); <u>Lott v.
Mueller</u>, 304 F3d 918 (9th Cir. 2002); <u>Huizar v. Carey</u>, 273 F3d
1220 (9th Cir. 2001).

Furthermore, three of the four grounds for relief presented
in Petitioner's § 2255 form-motion were alleged in a pleading
filed by the Clerk on January 29, 2007.  See Petitioner's Appli-
cation to Proceed In Forma Pauperis and for Receipt of Trial
Transcripts and Other Documents Under 28 U.S.C. § 753(b).  Under
the rule of liberal construction of pro se prisoner pleadings
to do justice, the grounds for relief alleged in the aforementioned
"Application" must be viewed as timely.  See <u>Price v. Johnston</u>,
334 US 266, 292 (1948); <u>Haines v. Kerner</u>, 404 US 519, 520 (1972).

Under either prison mailbox rule analysis or liberal construc-
tion or equitable tolling doctrines, the § 2255 claims presented
in this case should be deemed timely filed.

II.  GROUND ONE OF PETITIONER'S § 2255 MOTION STATES A CLAIM
WHICH, IF PROVEN, ENTITLES HIM RELIEF AND PETITIONER HAS
ALLEGED FACTS SUFFICIENT FOR THE COURT TO PERMIT DISCOVERY
ON THE CLAIM, CONDUCT AN EVIDENTIARY HEARING, OR BOTH.

The Government's Response presents the following defenses

to Petitioner's collateral attack on his convictions on the

ground that investigative records were withheld in violation of

Brady v. Maryland, 373 US 83 (1963):  (1) the claim is "perfunc-

tory" and "should be denied under Wimberly [because] it is[8/]

undeveloped, [unsupported by pertinent legal authority] and

based on...speculation that there may be a basis for relief",

Government Response at 18-19; the claim is forfeited/waived

because not raised on direct appeal, id. at 3; (3) the claim "is

totally lacking in merit", id. at 19.  Each of these contentions

is addressed in turn below.

**A.  The Wimberly waiver standard relied upon by Respondent
applies on direct appeal, not in pro se collateral
attack proceedings.**

The cases cited by Respondent in support of its undeveloped-

unsupported-claims waiver defense were all decided on direct

appeal; and this standard, which the Court is urged to apply to

deny relief Petitioner seeks, has no place in proceedings on

a pro se motion under 28 U.S.C. § 2255.  Why this is so is

explicated, at least in part, in another case cited by Respondent,

United v. Brocksmith, 991 F2d 1363, 1366 (7th Cir. 1993), where

_____
[8/]  United States v. Wimberly, 60 F3d 281, 287 (7th Cir. 1995) is cited by Respondent in support
of proposition that Petitioner's Brady claim is forfeited or waived because it is undeveloped
and unsupported by pertinent legal authority.  See Government Response at 9, 18-19.

the court said--

> "Counsel bears responsibility for narrowing the issues
> presented on appeal...[t]he premise of our adversarial
> system is that appellate courts don not sit as self-
> directed boards of legal inquiry and research, but
> essentially as arbiters of legal questions presented
> and argued by the parties before them...Undeveloped and
> unsupported claims are waived."

It follows that uncounseled prisoner-litigants should not have
the Wimberly/Brocksmith standard applied to their motions under
§ 2255.

The standards for determining § 2255 motion claims is set
forth in the statute, its governing rules and the body of case
law interpreting habeas corpus and federal prisoner collateral
attack provisions.    Among other things, these require that §
2255 motions--

> "specify all the grounds for relief available to the
> moving party;
>
> "state [in summary form] the facts supporting each ground".

Rule 2, § 2255 Rules;[2]

> "Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no
> relief, the court shall cause notice thereof to be served
> upon the United States attorney, grant a prompt hearing
> thereon, determine the issues and make findings of fact
> and conclusions of law with respect thereto."

28 U.S.C. § 2255;

---

[2] See also Jones v. Jarrison, 20 F3d 849, 853 (8th Cir. 1994) ("No statute or rule requires that a petition identify a legal theory or include citations to legal authority."). Also, where a Petitioner's § 2255 motion does not set forth requisite details, facts necessary to avoid dismissal may be supplied in subsequently filed affidavit or other pleading.  See Ellzey v. United States, 324 F3d 521 (7th Cir. 2003) ("placeholder" motion subsequently amended with supporting facts); Porcaro v. United States, 784 F2d 38, 41 (1st Cir. 1986); (lack of specificty in original motion cured by facts alleged in subsequent pleading); United States v. Rodriguez-Rodriguez, 929 F2d 747, 752 (1st Cir. 1991) (same); Kiendra v. Hadden, 763 F2d 69, 71-72 (2d Cir. 1985).

A prisoner's allegations of fact in support of a § 2255 motion must be taken as true unless they are "palpably incredible, [or] patently frivolous or false."

Blackledge v. Allison, supra, 431 US at 76;

"Since [prisoners] act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on members of the legal profession."

Price v. Johnston, supra, 334 US at 292;

"[A habeas corpus petitioner is] entitled to careful consideration and plenary processing of [his claims], including full opportunity for presentation of the relevant facts."

Blackledge, supra, 334 US at 82;

"Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the **duty of the court** to provide the neccessary facilities and procedures for an adequate inquiry."

Harris v. Nelson, supra, 294 US at 300.  Under the foregoing authority/precedent, Petitioner's Ground One claim should not be denied as undeveloped/unsupported as Respondent urges.  Rather, for the reasons advance below, the Court should grant Petitioner leave to utilize discovery procedures and/or order an evidentiary hearing to permit the relevant facts to be fully developed.

**B. Respondent's assertion that Petitioner's Ground One claim lacks merit is refuted by the record, and there is ample reason to believe that, if the facts are fully developed, Petitioner can demonstrate that he is entitled to relief.**

Petitioner's first ground for relief is that the Government violated the rule of <u>Brady v. Maryland</u>, supra, by failing to disclose the records of its investigation of Petitioner compiled between March 19, 1993 and November 1995, despite Petitioner's pretrial request for production of exculpatory and impeaching information.   Under <u>Brady</u> and its progeny, the prosecution's suppression of material evidence favorable to a defendant, "even if such evidence is not requested by the accused, is a violation of due process." <u>United States v. Jackson</u>, 780 F2d 1305, 1308 (7th Cir. 1986).  To succeed on a claim under <u>Brady</u>, a defendant must establish that: (1) the prosecution suppressed evidence; (2) such evidence was favorable to the defense; and (3) that the suppressed evidence was material.  Id.  Evidence is material, for purposes of establishing a violation of the <u>Brady</u> rule, only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense; a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  <u>United States v. Bagley</u>, 473 US 667 (1985).  Impeachment evidence as well as exculpatory evidence falls within the scope of the rule that the failure of the prosecuiton to disclose evidence favorable to

-13-

an accused violates due process where the evidence is material either to guilt or punishment.  Id.

On September 18, 1997, Petitioner, through counsel, filed a pretrial motion for disclosure of impeaching and exculapatory information in the possession of the prosecution.  See Docket Entry ("D.E.") 130.  The trial court granted the motion.  However, the Government's response to the discovery motion did not disclose that the investigation which led to Petitioner's indictment had begun in March 1993.  At Petitioner's trial, Government witnesses testified that the investigation which led to Petitioner's indictment began in or around November 1995.  Furthermore, the indictment contained no charge of a criminal act committed by Petitioner before the fall of 1995.  Evidence that the Federal Bureau of Investigation ("FBI") investigated Petitioner for more than two years without developing evidence sufficient to charge him with a significant criminal act was not, could not be, presented to the jury because it was suppressed by the Government.

On December 12, 2006, Petitioner made a request for access to investigation records pursuant to the Freedom of Information Act ("FOIA").  In response to this FOIA request, a number of pages or records were released, several of which established that the FBI initiated its investigation of Petitioner in March 1993, and that foing forward, FBI investigators planned to use confidential informants to obtain incriminating evidence against Petitioner via consensually monitored conversations.  Moreover,

the FBI's response to Petitioner's FOIA request indicates that there exist more than 3,000 pages of investigation records that were not released because Petitioner was unable to pay copying costs due to indigence.  These records constitute evidence that is both favorable and material to a line of defense which Petitioner sought to pursue at trial: i.e., that the Government engaged in evidence fabrication, suborning of false statements and perjured testimony, coercion of witnesses and other illegal/improper conduct, [10] in order to convict Petitioner of  otherwise unprovable crimes.  See Petitioner's Declaration in Support of Motion to Vacate, at ¶ 8, incorporated herein by reference.

Whatever the content of the 3,000 pages of undisclosed investigation records, their existence is favorable to the defense and material to the question whether Petitioner was guilty as charged or was the victim of a frame-up because, if disclosed prior to trial, the prosecution could not have mislead the jury in regard to when its investigation  began  and Petitioner could have argued that, frustrated by failure to develop legitimate incriminating evidence after two years, police/prosecutors resorted to illegal/improper means to make a major case against petitioner.  This refutes the Governments assertion that Petitioner's Ground One claim "should be denied as waived...[because] it is... based totally on his speculation that there may be a basis for

---

[10]    See the attache Exhibits 1 - 1  (affidavits and other evidentiary material, obtained by Petitioner post-trial, which further substantiate his assertions of police and prosecutorial misconduct, and actual innocence of a number of the charged offenses he was convicted of.

relief." Government's Response at 18-19. Considering the
totality of the circumstances, including the Governemnt's misrep-
resentation that it complied with its Brady obligations, there
is reason to believe, not only that the undisclosed records
contain favorable and material information, but also that, if
the facts are fully developed, Petitioner can demonstrate his
entitlement to relief. See Kyles v. Whitley, 514 US 419 (1995)
(holding that government's disclosure obligation turns on the
cumulative effect of all such suppressed evidence and the prosecu-
tor is responsible for guaging that effect); United States v.
Jackson, supra, 780 F2d at 1311 n.4 (government's bad faith
attempt to suppress evidence indicates that such evidence may
be material).

**C. Any procedural default by Petitioner on his Ground
One claim should be excused because it is based on facts
not developed at trial which should be considered to avoid
a fundamental miscarriage of justice - that is, allowing
to stand his convictions for crime of which he is actually
innocent; but insofar as Petitioner may be required to
show cause and prejudice to obtain collateral review of
the claim, he asserts as cause for default the Government's
suppression of the relevant evidence and that it worked
to his actual and substantial disadvantage.**

Courts usually will not entertain a § 2255 motion's claims
if the movant did not raise them pretrial, at trial, or on direct
appeal. United States v. Frady, supra, n.4. In order to obtain
§ 2255 relief despite such procedural default, a movant must

show both cause for his failure to assert the claim in earlier
proceedings and actual prejudice from the alleged error. Id.
However, federal courts retain the authority to issue writs of
habeas corpus despite failure to show cause for a procdural
default when a constitutional violation probably has caused
the conviction of one innocent of the crime. Murray v. Carrier,
477 US 468, 496 (1986); McClesky v. Zant, 499 US 467, 494 (1991);
Bousley v. United States, 523 US 614, 623 (1998).

In the instant case, Petitioner was convicted on fourteen
separate counts, most on the basis of evidence that was less than
overwhelming. As noted in the preceding section, Petitioner
believes that he is the victim of lawless police and prosecutors,
and avers that he is actually innocent of most, if not all,
counts of conviction. The evidence suppressed by the Government
of its long and fruitless investigation of Petitioner, when
viewed in context with the testimony of criminal witnesses who
had deals with prosecutors and other circumstances, [11]/ can reasonably

_____

[11]/ It is further noted that the Government acknowledges that its confidential informant, Myron
"Boojie" Robinson, gave false statements and testimony regarding Petitioner's planning and participation
in an alleged robbery on December 8, 1995. Gov't Response at 14-15. Unacknowledged, unexplained
and unrevealed at trial, is the fact that FBI agents Deborah Jones-Buggs, and Joseph M Karnik, along
with Chicago Police Sergeant Eugene Shephard, made statements and otherwise acted to corroborate
Robinson's lying story about Petitioner's being involved in the December 8, 1995 robbery. See
attached Exhibit 5 (Affidavit in Support of Application for Communications Intercepts). A clear
inference of it all is that there was collaboration between Robinson and the law enforcement
officers to bring false charges against Petitioner.

be taken to put the whole case in such a different light as
to undermine confidence in the verdicts and require a new trial.
Kyles v. Whitley, supra.

But should the Court find that the fundamental miscarriage
of justice exception is not applicable, the requirement of showing
cause and actual prejudice for procedural default is met under
the facts  of case and the Supreme Court's holdings in Banks
v. Dretke, 540 US 1166 (20004).  See also Ratliff v. United
States, 999 F2d 1023, 1026 (6th Cir. 1993) (pro se § 2255 motion
construed liberally to satisfy cause and prejudice standard).

**D.  The Court should grant fact-development procedures
with respect to Petitioner's Brady violation claim, including
discovery, expansion of the record and an evidentiary
hearing.**

Petitioner submits that his § 2255 motion, declaration
in support thereof, and the instant memorandum, allege facts
sufficient to entitle him to conduct discovery and to an evidentiary
hearing to establish that he is entitled to relief on his claim that
the Government suppressed evidence favorable and material to
his defense, in violation of constitutional right to due process
of law.  Motions for an order authorizing the appropriate fact-
development procedures will be filed with the Court as soon as
possible.

III. GROUND TWO OF PETITIONER'S § 2255 MOTION STATES A VALID CLAIM
FOR RELIEF TO WHICH HE IS ENTITLED.

The § 2255 motion's Ground Two claim for relief is that
the trial court prevented Petitioner from examining/cross-examining
informants and law enforcement officers who played critical
roles in the investigation leading to indictment and, thereby,
prevented Petitioner from presenting to the jury evidence impeaching
the Government's case, a violation of the Sixth Amendment's
Confrontation Clause and the right to a fair trial.  As noted in
preceding sections, a confidential informant ("CI"), Myron Robinson,
made statements and took other actions to falsely inculpate
Petitioner in a purported robbery, the earliest of the predicate
offenses on which racketeering, conspiracy and other federal
charges were based.  Before Robinson's story about Petitioner's
having participated in the robbery was exposed as a lie, FBI
agents and Chicago Police Department ("CPD") officers made state-
ments under oath or otherwise conducted themselves so as to
corroborate Robinson's false accusations against Petitioner.
These circumstances, when considered in combination with the
Government's suppression of other records of its investigation,
can reasonably be taken to put the whole case in such a different
light as to undermine confidence in the jury's verdicts.

The trial court ruled that the defense could not make any
reference to the December 8, 1995 robbery in front of the jury,
and that the defense could not call Robinson to impeach him,

but allowed, over constant objections, the out-of-court testimony
and recorded conversations involving Robinson to be admitted.

In its "Response" to the § 2255 motion's Ground Two, the Govern-
ment asserts that Petitioner's Confrontation Clause claim should
be denied because it is "undeveloped," "procedurally barred and
waived," and "totally lacking in merit" in that "the statements
of Robinson...were not hearsay as defined under Rule 801(c)
[and] were not admitted for the truth of the matter asserted.
These contentions should be rejected for the reasons set forth
below.

**A.  Petitioner's Ground Two claim is not "undeveloped."**

The Ground Two claim is set forth in the § 2255 motion in
summary form as required by the § 2255 Rules.  See ante, at
10-12.  The motion and subsequent pleadings set forth facts
sufficient to state a valid claim for relief and entitle Petitioner
to an evidentiary hearing.

**B.  There is cause for Petitioner's failure to raise the
Confrontation Clause issue on direct appeal, ineffective
assistance of appellate counsel, and Petitioner suffered
actual prejudice as a result thereof.**

See part V., infra, addressing Ground Four's ineffective
assistance of appellate counsel claims.

**C.  Petitioner's Ground Two claim is meritorious.**

The Sixth Amendment's Confrontation Clause provides a criminal
defendant the right to directly encounter adverse witnesses
and the right to cross-examine adverse witnesses.  See United
States Constitution, Amendment VI.  "The substance of the consti-

tutional protection is preserved to the prisoner in the advantage
he has once had of seeing the witness face to face, and of
subjecting him to the ordeal of a cross-examination.  This,
the law says, he shall under no circumstances be deprived of."
Mattox v. United States, 156 US 237, 244 (1895).  Out of court
statements are inadmissable at trial unless the witness is
unavailable to testify at trial, and the defendant has had a
prior opportunity to cross-examine the witness.  Ohio v. Roberts,
448 US 56 (1980).(holding that out of court declarants statements
are admissable only if it bears adequate indicia of reliability).
Courts have recognized the potential for abuse in allowing a
police officer to testify to the out-of-court statements and
actions of a confidential infromant.  See United States v. Lovelace,
123 F3d 650, 653 ("courts, who must weigh the need to provide
context against the prejudicial effect of admitting an out-of-
court statement that testifies to the likelihood of a criminal
act [are] justifiably wary...[the risk of prejudicial impact it
may create] cannot be justified simply to set forth the backgound
of the investigation."); United States v. Williams, 133 F3d 1048,
1051-52 (7th Cir. 1998)."Allowing agents to narrate the course
of their investigation and thus spread before juries damning
information that is not subject to cross-examination, would
go far toward abrogating the defendant's rights under the Sixth
Amendment and the hearsay rule."  United States v. Silva, 380
F3d 1018, 1020 (7th Cir. 2004).

In the instant case, Government agents testifying at trial were allowed to interpret the recorded conversations, actions and statements given by Robinson during the investigation. The Government now says that the "trial transcript and jury instructions combined with case law show Jackson's rights under the confrontation clause were not violated when audio and video recordings of Robinson and Council were admitted into evidence."[12] Government Response at 19. Petitioner does not have access to the relevant transcripts for purposes of this memorandum, but submits to the Court that the question is at least debatable by jurists of reason and an evidentiary is warranted.

---

[12]   Petitioner notes that the relevant transcripts and other case records are among the subjects of a "motion for access" filed in January 2007, which has yet to be passed on by the Court.

IV.   THE § 2255 MOTION AND THE FILES AND RECORDS OF THE CASE
      DO NOT CONCLUSIVELY SHOW THAT, UNDER THE FACTS ALLEGED
      BY PETITIONER IN SUPPORT OF HIS GROUND THREE CLAIM, HE
      IS ENTITLED TO NO RELIEF: THE COURT SHOULD, THEREFORE,
      GRANT AN EVIDENTIARY HEARING THEREON.

     The § 2255 motion's Ground Three claim for relief is that:

(1) trial counsel had a potential conflict of interest of which

the court was aware but failed to adequately inquire into, or

advise as to potential dangers or obtain Petitioner's waiver with

respect thereto; (2) the Government was aware of facts which

presented serious potential conflict of interest - i.e., that

trial counsel was under investigation for possible obstruction of

justice in a State homicide prosecution - that it failed to

disclose to the trial court or Petitioner; (3) defense counsel

labored under actual conflicts of interest - i.e., her attorney-

client relationship with a prosecution witness testifying against

Petitioner, her personal, professional and business relationship

with a codefendant, her investigation for crimes by the same

United States Attorney's office which was prosecuting Petitioner;

and (4) these conflicts had adverse effects on counsel's perform-

ance.

     The right to counsel under the  Sixth Amendment entails

a correlative right to representation that is free from conflicts

of interest." Wood v. Georgia, 450 US 261, 271 (1981) (citing

Cuyler v. Sullivan, 446 US 335 (1980) and Holloway v. Arkansas,

435 US 475).  Ineffective assistance of counsel may result from

an attorney's conflict of itnerest.  <u>Strickland v. Washington</u>,
466 US 668, 692 (1984) (right to effective assistance of counsel
impaired when defense counsel operates under conflict of interest
because "counsel breaches the duty of loyalty, perhaps the most
basic of counsel's duties").  A trial court has a duty to avoid
potential conflicts of interest.  <u>Cuyler</u>, supra, 446 US at 346-
47.  The court must initiate an inquiry if it knows or reasonably
should know that a  potential conflict exists.  <u>Holloway</u>, supra,
435 US 475, 484-85 (court's failure to inquire into conflict
of interest after defense counsel's pretrial warnings of conflict
violated right to effective assistance of counsel because court
has duty to avoid potential conflicts and automatic reversal is
required).  There are two ways to assert an ineffective assistance
claim based on counsel's conflict of interest: (1) under the
Supreme Court's ruling in <u>Strickland</u>, supra, the defendant may
show that his attorney had a potential conflict of interest and
that the potential conflict prejudiced his defense, or (2) under
<u>Cuyler</u>, supra, a violation may be established by showing that
an actual conflict of interest adversely affected his lawyer's
performance.  On an ineffective assistance claim based on counsel's
conflict of interest,  a defendant is not required to engage
in speculation pointing to an actual adverse effect before he
has the benefit of an evidentiary hearing.  <u>Hall v. United States</u>,
371 F3d 969, 974 (7th Cir. 2004).

The defenses in the Government's Response to the Ground Three claims, and Petitioner's replies to each are as follows:

Respondent first asserts, "the trial transcript that Jackson seeks shows that this **issue has no merit** [because it] was brought to the attention of the trial judge who made an inquiry on the record and held a hearing...[it] was resolved when the government informed Jackson's trial counsel that she was not under investigation. Thus, there was no conflict." Govt. Resp. at 21 (emphasis added)

Petitioner notes that the Government does not dispute that the trial court failed to make an inquiry or caution Petitioner regarding the conflict presented by Anthony Buchanan's testifying against Petitioner after it was brought to the court's attrention by defense counsel and/or AUSAs.[13] Defense counsel's prior attorney-client relationship with Anthony Buchanan and her relationships with codefendant Terry Young[14] created an actual conflict of interest, and counsel's performance was adversely affected thereby in that she chose not to vigorously cross-examine Buchanan, as was requested by Petitioner, out of fear that Terry Young might be injured and her relationships with him come under greater scrutiny.

[13] See Petitioners Declaration in Support of Motion to Vacate at ¶¶ 12-35.

[14] Among other things, the records conversations between codefendant Terry Young and defense counsel Joan Hill McClain suggest that the two were involved in some business dealings and had conversations frequently enough to conclude that there was a personal relationship between them as well.

Furthermore, whether defense counsel was actually under investigaiton for possible obstruction of justice in a State murder case is not resolved by the prosecutor's representations during the hearing referenced in the Response, because, as the Government points out in the next paragraph, "[t]he issue...was brought to trial court's attention...in the context of an allegation that trial counsel **had attempted to influence the testimony of a witness in the trial of this case.**" Id. (emphasis added) Qeustioned by the court directly as to wheter or not "there [is] any invetigation of Ms. Hill McClain other than this...that's been discussed here today", the UASAs present answered respectively--

> "Mr. Stoll:      Your Honor...none that I am aware of,
>                  but I also don't know personally...
>
> Mr. Netols:     ...Your Honor, I have no knowledge of any
>                  investigation.
>
> Mr. Filip:      ...Your Honor.  I have no personal knowledge.
>
> THE COURT:      So the only knowledge you have is as it
>                  relates to this thing that happened last
>                  night.
>
> Mr. Stoll:      Correct, Your Honor."

Tr. at 1356.  These answers do not foreclose the possibility that an obstruction of justice investigation of Ms. Hill McClain and others was ongoing at the time of Petitioner's trial.  Petitioner has received information, which he credits, that this was in fact the case.  Petitioner submits that it remains an open question and that the Court should order an evidentiary hearing or, at least, grant leave for Petiitoner to utilize

discovery procedures to resolve the question because: (i) an actual conflict is presented if the answer to the question is yes; (ii) it is a conflict of such a serious nature that no rational defendant would knowingly and intelligently desire representation by Ms. Hill McClain in the circumstances and she should have been disqualified; (iii) prejudice should be presumed because the Government failed to disclose the fact of such an investigation.

Next, The Government's Response asserts, "[t]his issue was not raised in post trial motions by trial counsel or on appeal by different appellate counsel and thus is also procedurally barred." Govt. Resp. at 22.

In fact, an attorney appointed to repressent Petitioner after Hill Mclain's withdrawal filed a motion for new trial base on the obstruction-of-justice/conflict-of-interest issue. See Docket Entry 616. But the same attorney, Kent R. Carlson, rebuffed several direct request by Petitioner to raise the issue on direct appeal. The claim is not, therefore, procedurally barred, as it was previously presented. Also, there is cause for not raising it on direct appeal, ineffective assistance of counsel, and Petitioner suffered actual prejudice as a result, a remand by the Court of Appeals for an evidentiary hearing.

V.    THE § 2255 MOTION AND THE FILES AND RECORDS OF THE CASE
      DO NOT CONCLUSIVELY SHOW THAT PETITIONER IS ENTITLED TO
      NO RELIEF ON HIS GROUND FOUR CLAIM OF INEFFECTIVE ASSISTANCE
      OF APPELLATE COUNSEL

Petitioner asserts that he was prejudiced due to his appellate attorney's failure to adequately represent him on his direct appeal.  The Petitioner requested his appellate attorney, Kent R. Carlson, to file numerous issues, such as violation of the confrontation clause and trial counsel having conflicts of interest; however, Mr. Carlson refused to comply with those requests.

The Sixth Amendment guarantees a defendant to effective assistance of counsel on direct appeal.  Evitts v. Lucey, 469 US 387 (1985); Mason v. Hanks, 97 F3d 887, 894 (7th Cir. 1996) (counsel's failure to raise obvious and significant issues was ineffective assistance because it was without legitimate strategic prupose.

## Conclusion

Petitioner notes that, in spite of the Court's generosity in granting an extra seven days to work on this Memorandum, the time was insufficient to research and reply to the Government's response completely.  The Court is humbly reminded that this pro se pleading is entitled to liberal construction.  For the reasons set forth above, the Court should reject the Government's request for the denial of Petitioner's § 2255 motion and instead grant an evidentiary hearing and/or leave to conduct discovery so the facts can be fully developed and Petitioner can demonstrate that he is entitled to relief.

I declare under penalty of perjury that material statements

-28-

in the foregoing are true and correct to the best of my knowledge,
information and belief.

Respectfully submitted,

Edward Lee Jackson, Jr.
Reg. No. 07546-424
Federal Correctional Institution
P.O. Box 1000
Cumberland, Maryland 21501-1000

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing
Memorandum will be mailed, first class postage prepaid on April
22, 2008, to:

        Brian Netols
        Assistant U.S. Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604

Edward Lee Jackson, Jr.